UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                          Case No. 04-CR-248

JEFFERSON N. CALIMLIM,
ELNORA M. CALIMLIM, and
JEFFERSON M. CALIMLIM,

    Defendants.

## ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S RECOMMENDATIONS ON MOTIONS TO SUPPRESS

    On November 4, 2005, this court issued a Recommendation and Order with respect to the numerous motions filed by the defendants in this case. Among the motions addressed in that Recommendation and Order were the defendants' motions to suppress the evidence obtained pursuant to two warrants authoring searches of the defendants' residence on September 28 and 29, 2004. The defendants challenged, *inter alia*, whether the applications for such search warrants set forth probable cause. For the reasons more particularly set forth in the Recommendation, I recommended that the district judge deny the defendants' motions to suppress. On January 27, 2006, Chief United States District Judge Rudolph T. Randa adopted this court's Recommendation (with the exception of one matter that has nothing to do with the defendants' instant motion).

    On March 28, 2006, the defendants filed with this court a motion for reconsideration of its recommendations on the motions to suppress evidence obtained pursuant to the above-described search warrants. In support of their motion the defendants filed a copy of the "tape recording of the

initial call received by the government from an anonymous caller, which generated this investigation." (Affidavit of Attorney Thomas E. Brown at ¶ 2.) According to the affidavit of Attorney Brown, "[a] review of the tape recording reveals several inconsistencies with the affidavit that formed the probable cause for the search warrant obtained by the government to conduct the initial search of the Calimlim residence." (Aff. at ¶ 3.) Although Attorney Brown suggests that the defendants be given an opportunity to further brief the matter, he "initially direct[s] the court's attention to the following matters that are inconsistent with the affidavit:"

> (a) there is no mention in the taped call that the Calimlims never intended to process paperwork to make the "victim" legal in this country;
>
> (b) the place where the victim is being kept is described in the call as a "nice" bedroom and not as a locked wine cellar;
>
> (c) the caller specifically indicates she does not believe the name she is providing -- "Erma Martinez" -- is the actual name of the person residing at the Calimlim residence.

(Aff. at ¶ 4.)

The defendants do not state precisely what relief they would seek from this court if they were granted leave to file further briefs, but it is safe to assume that they would seek suppression of the evidence obtained pursuant to the search warrants. Moreover, the defendants do not state the grounds upon which they would seek such relief, although I surmise that they would rely upon the holding in *Franks v. Delaware*, 438 U.S. 154 (1978).

In *Franks v. Delaware*, the Supreme Court held that the Fourth Amendment requires an evidentiary hearing into the truthfulness of an allegation contained in an affidavit supporting an application for a search warrant "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included

by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56. *Franks* makes it clear that affidavits supporting a search warrant are presumed valid, and that the "substantial preliminary showing" that must be made to entitle the defendant to an evidentiary hearing must focus on the state of mind of the warrant affiant, that is the law enforcement officer who sought the search warrant. *Id*. at 171. The defendant must offer evidence showing either that the warrant affiant recklessly disregarded the truth because he "in fact entertained serious doubts as to the truth of his allegations" or had "obvious reasons to doubt the veracity of the allegations." *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)).

The information that was allegedly provided to law enforcement authorities by the anonymous caller is set forth in paragraphs 6 through 12 of the affidavit filed in support of the September 28, 2004 warrant application.[1] Those particular paragraphs read as follows:

> 6. On August 24, 2004, the ICE Law Enforcement Support Center (LESC) received a call from an anonymous female on the DHS 2-ICE tip line. The female caller stated that she was a former friend of Jefferson and Elnora CALIMLIM of 19120 Still Point Trail, Brookfield, WI. The caller stated that the CALIMLIMs' phone number is 262-786-9686. The caller also stated that an Erma MARTINEZ has been in the United States illegally for 18 years and is currently living at 19120 Still Point Trail, Brookfield, WI. The caller stated that the CALIMLIMs are prominent doctors in the community.
>
> 7. The caller stated that Erma MARTINEZ has been a housekeeper/servant for the CALIMLIM family with the false hope that they will sponsor her for a permanent resident alien card. The caller stated that the CALIMLIMs have no intention of filing the necessary immigration paperwork for MARTINEZ. The caller stated that MARTINEZ came to the United States at the age of 18 and her main responsibility is to take care of the children in the CALIMLIM household.

---

[1] The affidavit filed in support of the September 28, 2004 warrant application was subsequently incorporated into the affidavit filed in support of the September 29, 2004 warrant application.

8. The caller stated that MARTINEZ is currently living in the basement in a wine cellar at the CALIMLIM house, which is used as a bedroom. The caller states that MARTINEZ is paid cash under the table by the CALIMLMs. The caller states that MARTINEZ forwards monies to her family overseas and is not allowed to socialize in public.

9. The caller stated that MARTINEZ is locked in the basement of the CALIMLIM house and is only let out for the purpose of cleaning, caring for the children, cooking, laundry, walking the family's dog, or occasional visits to the church.

10. The caller stated that she was a friend of the CALIMLIMs and severed all ties with them after seeing how they treated MARTINEZ.

11. The caller provided the names of Jefferson and Elnora CALIMLIM and the address of 19120 Still Point Trail, Brookfield, WI as the owners of the house and employers of MARTINEZ. The caller described MARTINEZ as 5'1" tall, 120 pounds, brown eyes, and black shoulder-length hair.

12. The caller then broke down and cried on the phone. The caller requested that the Department of Immigration follow up on this tip as soon as possible for the benefit of MARTINEZ's welfare. The caller stated that no one should live under those conditions, that it is just not humane and hopes that Immigration will approach the situation very carefully because the CALIMLIM family is the only people MARTINEZ knows.

Taking up the invitation of defense counsel, I have reviewed the 17 minute tape recording of the August 24, 2004, anonymous call. Simply stated, I find that paragraphs 6 through 12 of the affidavit set forth fairly, albeit in summary fashion, the information provided by the caller. To be sure, there are a few differences between the actual statements that the caller made and how such statements were presented in the affidavit. But, in my opinion, the differences are not material. In other words, even if some of the caller's statements had been more precisely presented, it would not have vitiated probable cause.

To begin, the defendants assert that "there is no mention in the taped call that the Calimlims never intended to process paperwork to make the 'victim' legal in this country." (Brown Aff. at ¶

4

4(a).)  However, the caller did state that the person whom the caller knew as "Erma" (who was uneducated and had been in this country for 15 or 18 years) told her that she believed the family (the Calimlim family) was trying to "get her citizenship or a green card" and that the process to do so was "still going on."  Yet, "the family" told the caller that "they never did it."  Moreover, when the representative of LESC suggested to the caller that it sounded like there had been some "deceit" with respect to applying for a green card (because it does not take that long to get a green card), the caller readily agreed and said "Oh, 100 percent."

      The defendants also assert that "the place where the victim is being kept is described in the call as a 'nice' bedroom and not as a locked wine cellar." (Brown Aff. at ¶ 4(b).)  To be sure, the caller did state that Erma stayed in a "very nice bedroom" in the basement.  The caller also stated, however, that "before I knew of this activity, I was always told that was their wine cellar, [be]cause it was locked."  Indeed, she stated that it was "always locked."  Moreover, earlier in the telephone conversation the caller stated that Erma was "in the basement in this room that's locked."  Finally, during the course of the telephone conversation, the caller also stated that "Erma" was hidden in the Calimlim's basement.

      Finally, the defendants assert that "the caller specifically indicates she does not believe the name she is providing -- 'Erma Martinez' -- is the actual name of the person residing at the Calimlim residence." (Brown Aff. at ¶ 4(c).)  Indeed, the caller did state that "Erma" told her (the caller) that her name was Erma Martinez.  Moreover, the caller states "that's what they told me her name was."  However, the caller says: "I don't believe it.  I just have a hard time believing that's her real name."  Furthermore, the caller states that she "doesn't even know if [Erma] is her real name."

      To reiterate, I am satisfied that, even if the above-referenced caller's statements had been

5

Case 2:04-cr-00248-RTR   Filed 04/05/06   Page 5 of 7   Document 142

more precisely presented in the search warrant affidavit, there would still have been probable cause to search the Calimlims' residence for Erma Martinez.  Simply stated, whether or not the room Erma stayed in was a nice bedroom or a wine cellar does not matter.  In the end, the caller painted a picture of a woman who was not being allowed to leave freely.  Moreover, it simply does not matter whether the caller was certain of the actual name of the person who was being required to stay in the Calimlims' basement.  Finally, although literally speaking, "there is no mention in the taped call that the Calimlims never intended to process paperwork to make the 'victim' legal in this country," the fact that during the course of 18 years they had not taken the necessary steps to "make her legal" certainly suggests (indeed cries out) that they never intended to do so.

In conclusion, and for all of the foregoing reasons, the defendants' motion for reconsideration of this court's recommendations on the motions to suppress will be denied.

**NOW THEREFORE IT IS ORDERED** that the defendants' motion for reconsideration of this court's recommendations on the motions to suppress be and hereby is **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), Federal Rules of Criminal Procedure 59(a), and General Local Rule 72.3 (E.D. Wis.), whereby written objections to any order herein or part thereof may be filed within ten days of the date of service of this order.  Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures.  Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case.  Failure to object in accordance tithe the rules cited herein waives your right to review.

**SO ORDERED** this 5th day of April, 2006, at Milwaukee, Wisconsin.

        /s/ William E. Callahan, Jr.
        WILLIAM E. CALLAHAN, JR.
        United States Magistrate Judge